# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FOREVER GREEN ATHLETIC FIELDS, INC., KEITH DAY, AND DAVID RIPKA** <br> *Plaintiffs* <br><br><br> **VERSUS** <br><br><br> **BABCOCK LAW FIRM, LLC, BABCOCK PARTNERS, LLC, STEPHEN BABCOCK, APLC, TIMOTHY STEPHEN BABCOCK, ESQ., AND WESTPORT INSURANCE CORPORATION** <br> *Defendants* | **CASE NO.:** _____ <br><br> **JUDGE:** _____ <br><br> **MAGISTRATE:** _____ |

## C O M P L A I N T

**1.**     This is a legal malpractice action for money damages brought pursuant to La. C.C. Art. 2315, La. C.C. Art. 2030, *et seq.*, La. R.S. 9:3801, *et seq.*, La. R.S. 9:5605, La. R.P.C. 1.5(a)(1), and 28 U.S.C. 1332 against the Babcock Law Firm, LLC, Babcock Partners, LLC, Stephen Babcock, APLC, and Timothy Stephen Babcock, Esq., in their respective individual and/or corporate capacities as former counsel for the Plaintiffs and against Westport Insurance Corporation as the malpractice carrier / provider for Attorney Timothy Stephen Babcock, Esq.

**2.**     In August 2005, Forever Green Athletic Fields, Inc., Keith Day, and David Ripka retained the services of Attorney Timothy Stephen Babcock, Esq. to represent the Plaintiffs' respective corporate and personal capacities in an action filed by two (2) former employees: Dawson, et al. v. Forever Green, et al., Docket No. 531,941, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana (hereinafter sometimes Dawson I).

**3.**     Dawson I involved the claims of a former salesman and the salesman's wife against all

the named party Plaintiffs herein, particularly including intentional tortious interference with contract claims made against Keith Day, and David Ripka in their respective individual or personal capacities.

4.      Shortly after being retained, Attorney Babcock signed an agreed joint dismissal with Plaintiff's counsel whereby the employee/plaintiffs dismissed <u>Dawson I</u> without prejudice on August 26, 2005.

5.      Three hundred ninety-seven (397) days elapsed from the employee/plaintiffs' dismissal of <u>Dawson I</u> until their institution of a second suit naming the same party defendants in the same capacities on September 27, 2006: <u>Dawson, et al. v. Forever Green, et al.</u>, Docket No. 547,844, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana (hereinafter sometimes <u>Dawson II</u>).

6.      The Dawson plaintiffs made claims against Keith Day and David Ripka which universally sounded in tort, thereby implicating a one (1) year prescriptive period in accordance with La. C.C. Art. 3492: "Delictual actions are subject to a liberative prescription of one year."

7.      Where more than three hundred sixty-five (365) days—or one (1) year—elapsed between dismissal of <u>Dawson I</u> and institution of <u>Dawson II</u>, the employee/plaintiffs' tort claims against the individual corporate officers were clearly prescribed by operation of law.

8.      Attorney Babcock continued to represent the Plaintiffs herein (who were the named defendants in <u>Dawson I</u> and <u>Dawson II</u>) at all material times, including, without limitation, at the time of <u>Dawson II</u>'s filing on September 27, 2006.

9.      Attorney Babcock specifically represented the Plaintiffs between September 27, 2006, and February 5, 2008, at which time Attorney Babcock entered into a subsequent Attorney-Client Engagement Agreement ostensibly controlling the parties' engagement for all subsequent

representation.

10.     Attorney Babcock did thereafter continue to represent the Plaintiffs' interests until mid-2009—a point in time which was some three (3) years *after* an Exception of Prescription could have otherwise been filed summarily disposing of the lion's share of the ongoing Dawson II litigation.

11.     Keith Day and David Ripka repeatedly advised Attorney Babcock they were interested solely in protecting themselves from personal liability, and they were willing to confess judgment against their relatively-insolvent corporation as long as they were able to avoid being personally cast in judgment.

12.     Unfortunately, rather than filing a simple Exception of Prescription which was glaringly obvious on the face of the Dawson II pleadings and which would have completely dismissed Keith Day and David Ripka individually from the suit, Attorney Babcock, individually and by and through one (1) or more of the named corporate entities herein, chose to prolong the Dawson II litigation for the sole purpose of exacting exorbitant attorney fees paid for "trial preparation" in a suit not even requiring an Answer—much less a protracted trial.

13.     Upon information and belief, Attorney Babcock was aware the Dawson II tort claims were facially prescribed; however, he contrived a scheme whereby Plaintiffs would be compelled to remit well in excess of one hundred thousand dollars ($100,000.00) in legal fees for services which were untimely, unneeded, and wholly beyond the scope of a simple Exception of Prescription which would have summarily disposed of Dawson II (at least as to the individual defendants' personal liability) at its earliest stages with literally no preparatory work whatsoever.

14.     Alternatively, and upon information and belief, Attorney Babcock simply "missed" the glaring prescriptive date, such that he charged the attorney fees aforesaid upon the basis of a

sincere (yet wholly inexplicable) belief that his services were necessary for preservation of the clients' rights.

**15.**     The intentional and/or grossly negligent and/or professionally inept actions of Attorney Babcock caused Plaintiffs to incur tens of thousands of dollars in unnecessary legal fees, tens of thousands of dollars in lost time and productivity in relation to their trial preparation, expert witness fees, accounting fees, court costs, and a host of other attendant fees and general damages, the litany of which is set forth with particularity below.

## J U R I S D I C T I O N

**16.**     Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Fifteen (15), in their entirety, as if fully copied *in extenso* herein.

**17.**     Jurisdiction is based upon 28 U.S.C. 1332, where complete diversity exists between the party Plaintiffs and party Defendants, and the requisite amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

## P A R T I E S

**18.**     The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Seventeen (17), in their entirety, as if fully copied *in extenso* herein.

**19.**     Plaintiff Forever Green Athletic Fields, Inc. is a foreign corporation not licensed to do nor presently doing business in the State of Louisiana, being a Pennsylvania corporation which filed to withdraw from doing business in the State of Louisiana on March 23, 2006, by and through the authority of La. R.S. 12:312.

**20.**     Plaintiff Keith Day is a natural person and a competent adult of the full age of majority and consent, domiciled, living, and residing in the State of Pennsylvania.

**21.**     Plaintiff David Ripka is a natural person and a competent adult of the full age of majority

and consent, domiciled, living, and residing in the State of Pennsylvania.

22.     Defendant Babcock Law Firm, LLC is or was a domestic limited liability company, licensed to do and doing business in the State of Louisiana, being deemed to have its citizenship in Louisiana pursuant to the rationale set forth in <u>Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.,</u> C.A.7 (Ill.) 2004, 385 F.3d 737.

23.     Defendant Babcock Partners, LLC is a domestic limited liability company, licensed to do and doing business in the State of Louisiana, being deemed to have its citizenship in Louisiana pursuant to the rationale set forth in <u>Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.,</u> C.A.7 (Ill.) 2004, 385 F.3d 737, and being the new name assigned unto Babcock Law Firm, LLC.

24.     Defendant Stephen Babcock, A Professional Law Corporation, is a domestic business corporation within the intendment of 28 U.S.C. 1332(c)(1), licensed to do and doing business in the State of Louisiana, being deemed to have its citizenship in Louisiana pursuant to the rationale set forth in <u>Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.,</u> C.A.7 (Ill.) 2004, 385 F.3d 737, and being the alter-ego of Attorney Timothy Stephen Babcock, Esq.

25.     Defendant Timothy Stephen Babcock, Esq. is a natural person and a competent adult of the full age of majority and consent, domiciled, living, and residing in the State of Louisiana.

26.     Defendant Westport Insurance Corporation is a foreign insurance company domiciled in the State of Missouri, licensed to do and doing business in the State of Louisiana, and being properly given notice of these proceedings through the Louisiana Secretary of State, J. Thomas "Tom" Schedler, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

**F A C T S**

**27.** The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Twenty-Six (26), in their entirety, as if fully copied *in extenso* herein.

**28.** The following statements are made upon the best knowledge, recollection, information, and belief of Plaintiffs Keith Day (hereinafter sometimes "Day") and David Ripka (hereinafter sometimes "Ripka"), both individually and in their respective capacities as corporate officers of Forever Green Athletic Fields, Inc. (hereinafter sometimes "Forever Green").

**29.** The claims made by Plaintiffs relate to a very simple circumstance wherein two (2) former employees of Forever Green, Charles C. Dawson and Kelli L. Dawson (hereinafter sometimes "the Dawsons"), filed two (2) successive lawsuits against Day, Ripka, and Forever Green.

**30.** The Dawsons first filed suit against Day, Ripka, and Forever Green on May 3, 2005, in a matter captioned Dawson, et al. v. Forever Green, et al., Docket No. 531,941, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana (Dawson I).

**31.** The Dawsons were husband and wife who previously worked for Forever Green and who alleged they were owed certain unpaid wages / commissions / fees / expenses by Forever Green.

**32.** Further, the Dawsons alleged the personal liability of Day and Ripka for defamation and alleged intentional tortious interference with contractual relations—a narrow cause of action first recognized in 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La. 1989) and largely constrained to conduct closely synonymous with that case.  See, e.g., Guilbeaux v. Times of Acadiana, Inc., 94-1270 (La.App. 3 Cir. 8/9/95), 661 So.2d 1027, 1033.

**33.** In short, the Dawsons alleged claims against Forever Green arising under principles of contract *and* tort law; however, the Dawsons alleged claims against Day and Ripka arising *solely*

under principles of tort law.

**34.**     This dichotomy of claims and alleged liability remained unchanged through dismissal in Dawson I and later in the original and amended petitions filed in Dawson II.

**35.**     Upon receiving notification of Dawson I, Day, Ripka, and Forever Green sought the services of Louisiana counsel to represent their interests.

**36.**     Day, Ripka, and Forever Green ultimately retained the services of Attorney Timothy Stephen Babcock, Esq. either individually or by and through his various professional corporations, companies, associations, or partnerships, the full identity of which entities are not presently known to Plaintiffs.

**37.**     Plaintiffs allege upon information and belief Defendant Babcock provided his services through the entity of Babcock Law Firm, LLC, a domestic corporation which was created on or about March 5, 2003.

**38.**     Continuing upon information and belief, Plaintiffs allege "Babcock Law Firm, LLC" changed its name on or about July 14, 2010, and the entity has now been rebranded as "Babcock Partners, LLC."

**39.**     Plaintiffs allege there is a direct connexity of interests between "Babcock Law Firm, LLC" and "Babcock Partners, LLC," such that the former is properly made a party defendant herein by naming and serving the latter.

**40.**     Nevertheless, where the name of "Babcock Partners, LLC" was not created until on or about July 14, 2010, the former designation of "Babcock Law Firm, LLC" is used interchangeably throughout this pleading.

**41.**     Plaintiffs allege in the alternative that Defendant Babcock provided his services through the entity of "Stephen Babcock, APLC," a domestic business corporation created on or about

February 25, 2003.

**42.**     Plaintiffs specifically allege upon information and belief that the entities of "Babcock Law Firm, LLC," "Babcock Partners, LLC," and/or "Stephen Babcock, APLC" are *de facto* alter-egos of Defendant Babcock and are thus subject to the principles of corporate veil piercing. See, *e.g.*, Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 359 (5th Cir. 2003).

**43.**     Plaintiffs allege the presence of those four (4) elements/circumstances heretofore recognized by Louisiana courts as requiring the remedy of corporate veil piercing, including perpetrating fraud, breaching a professional duty, or committing violative acts of negligence or other wrongful conduct by the individual member of the LLC.  See, *e.g.*, Martin v. Spring Break '83 Production, LLC, 09-CV-7520, p. *4 (E.D.La. 06/24/11), --- F.Supp.2d ----, 2011 WL 2531461.

**44.**     Defendant Babcock formally enrolled on behalf of Day, Ripka, and Forever Green, and on August 25, 2005, the litigants' respective attorneys prepared, signed, and filed a "Joint Motion to Dismiss Without Prejudice."

**45.**     The Honorable Judge Timothy Kelley signed the attendant Order of Dismissal on August 26, 2005.

**46.**     The consent order was neither appealed nor made subject of any supervisory review; accordingly, Dawson I was fully dismissed (albeit without prejudice) on August 26, 2005.

**47.**     Some three hundred ninety-seven (397) days later, the Dawsons again filed suit against Day, Ripka, and Forever Green, this time filing suit on September 27, 2006, in a matter assigned Docket Number 547,844 in the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana (Dawson II).

**48.**     This second permutation of the Dawsons' claims omitted the earlier defamation claim;

however, the lawsuit still maintained tort and contract claims against Forever Green and only tort claims against Day and Ripka individually.

49.     Defendant Babcock by and through the various corporate entities identified herein continued to represent Forever Green, Day, and Ripka through the filing of <u>Dawson II</u> on September 27, 2006, and continuing forward at the time the original petition in <u>Dawson II</u> was amended on or about January 3, 2007.

50.     This subsequent amendment did not raise any new claims against Forever Green, Day, or Ripka.

51.     Prior to August 26, 2005, and at regular intervals thereafter, Plaintiffs Day and Ripka advised Defendant Babcock that their sole concern was protecting themselves from personal liability for the claims alleged by the Dawsons.

52.     The Dawsons alleged claims in tort against Day and Ripka arising from each gentleman's respective role as a corporate officer in Forever Green.

53.     Day and Ripka regularly advised Defendant Babcock the preeminent goal was to protect the corporate officers from any personal liability.

54.     Day and Ripka specifically advised Defendant Babcock they were willing to "walk away" from Forever Green and allow the Dawsons to obtain a consent or default judgment solely against the corporation.

55.     Day and Ripka questioned Defendant Babcock regarding whether there were any mechanism to allow such a disposition—where Day and Ripka could absolve themselves from any personal exposure and the extraordinary attorney fees and costs which were associated with their own personal civil defense.

56.     Day and Ripka expressed their desire to facilitate a resolution which protected them from

personal liability to Defendants.

57.     Day and Ripka directed Defendant Babcock to use the most cost-effective mechanisms available to protect Day and Ripka from personal liability.

58.     At no time did Day or Ripka advise Defendant Babcock that their defense of the Dawson litigation was anything more than a usual and customary business transaction to be completed as timely and with as much cost-effectiveness as possible.

59.     At no time did Day or Ripka advise Defendant Babcock that the Dawson case was a matter of personal pride or principle requiring the use of extraordinary resources.

60.     Defendant Babcock repeatedly advised Day and Ripka that the best defense to personal liability was to force the Dawsons to painstakingly prove each and every element of their respective claims.

61.     Defendant Babcock specifically advised Day and Ripka that the tens of thousands of dollars in legal fees he charged were "a good investment" to the extent Defendant Babcock used those fees to build a purportedly elaborate defense to the Dawsons' claims.

62.     The legal fees were, additionally, "a good investment" for Defendant Babcock in that he intended to use the funds to assist in the purchase of a new airplane.

63.     Defendant Babcock advised such a defense would help to offset and mitigate any personal exposure Day and Ripka would have; however, Defendant Babcock steadfastly suggested that there remained an excellent chance both Day and Ripka would be held personally liable for the Dawson II tort claims and therefore they must continue to pay him exorbitant attorney fees to prevent this potentiality.

64.     At one point, Defendant Babcock specifically told Day and Ripka that since roughly two hundred fifty thousand dollars ($250,000.00) was being sought by the Dawsons, Day and Ripka

should pay Defendant Babcock an additional two hundred fifty thousand dollars ($250,000.00) in attorney fees in order to "protect against" this possibility.

65.     Defendant Babcock never offered the facially transparent remedy of seeking to have the Dawsons' tort claims dismissed as being untimely.

66.     Rather, at every turn, Defendant Babcock sought additional attorney fees ostensibly in order to fully explore each and every nuanced issue of fact through pretrial discovery.

67.     Further, on or about February 5, 2008, Defendant Babcock presented a "new" contract to Forever Green and Day.

68.     Defendant Babcock opined this "Standard Attorney-Client Engagement Agreement" was necessary to secure his able representation in protecting Day and Ripka from at least *some* of the personal liability sought to be imposed by the Dawsons.

69.     Based upon the advice and direction of counsel, Day and Ripka paid well in excess of one hundred thousand dollars ($100,000.00) in attorney fees and costs unto Defendant Babcock.

70.     In return, Defendant Babcock engaged in some three (3) years of ongoing civil discovery and generated a mountain of meaningless paper—all while intentionally or with gross negligence continuing to "miss" a fundamental, transparent, and wholly dispositive defense to the precise claims identified by Day and Ripka as their singular concern.

71.     As is noted above, La. C.C. Art. 3492 provides: "Delictual actions are subject to a liberative prescription of one year."

72.     In this case, Dawson I was dismissed three hundred ninety-seven (397) days before Dawson II was filed.

73.     At the time Dawson II was filed on September 27, 2006, all of the claims against Day and Ripka had indisputably prescribed by operation of law.

**74.** Defendant Babcock had actual or constructive knowledge that the claims presented in Dawson II were substantively identical to those previously dismissed in Dawson I—where Defendant Babcock personally signed the earlier Joint Motion to Dismiss Without Prejudice.

**75.** Unfortunately, despite this knowledge and despite having express instructions from Day and Ripka to resolve their own personal liability as expeditiously as possible, Defendant Babcock continued to "develop" a case principally by extracting money from Day and Ripka for some three (3) years after Dawson II was filed.

**76.** Ultimately, Forever Green was driven into virtual insolvency as a result, in part, of the tens of thousands of dollars paid in legal fees to Defendant Babcock.

**77.** Stunningly, when Forever Green refused to remit some thirty thousand dollars ($30,000.00) in *additional* legal fees claimed to be owed, Defendant Babcock withdrew from his representation of Forever Green, Day, and Ripka.

**78.** In view of an impending March 1, 2011, trial date, Forever Green, Day, and Ripka employed substitute counsel on January 28, 2011.

**79.** Over the ensuing thirty-two (32) days, counsel for Forever Green, Day, and Ripka prepared for a trial on the claims raised by the Dawsons' pleadings.

**80.** On March 1, 2011, on the morning of trial, Day and Ripka filed a Peremptory Exception of Prescription pursuant to La. C.C.P. Art. 927(A)(1).

**81.** Near the trial's mid-point, the parties entered a stipulated judgment casting Forever Green in judgment for the claims raised by the Dawsons, and the trial thereafter continued solely on the issue of personal liability for Day and Ripka.

**82.** Following the trial, the Court accepted post-trial memoranda in support and opposition to the earlier Peremptory Exception of Prescription.

**83.**    Nothing contained within either the original Exception or any of the subsequent supporting documents referenced anything except those laws and legal precedents which were already established on September 27, 2006—the date <u>Dawson II</u> was filed.

**84.**    The Day and Ripka Exception relied upon nothing more than facts and documents which were already in existence on September 27, 2006.

**85.**    The Day and Ripka Exception relied upon no post-2006 law.

**86.**    The Day and Ripka Exception relied upon no deposition testimony.

**87.**    The Day and Ripka Exception relied upon no prior trial testimony.

**88.**    The Day and Ripka Exception relied upon no single item produced or generated by Defendant Babcock.

**89.**    On June 30, 2011, the Trial Court granted the Peremptory Exception of Prescription, finding the Dawsons' claims against Day and Ripka were prescribed by simple application of La. C.C. Art. 3492.  The court's finding was straightforward and raised no novel issues of law or fact.

**90.**    The Court's June 30, 2011, written reasons were later made subject of a formal Order.

**91.**    The Court's ruling relied upon no single piece of evidence, testimony, or  any other item produced or generated by Defendant Babcock.

**92.**    The Court's ruling relied upon no item or evidence which was unavailable to Defendant Babcock on September 27, 2006—the date <u>Dawson II</u> was filed.

**93.**    In short, there is no basis whatsoever to support a protracted, three (3) year litigation of this case when a simple, dispositive Peremptory Exception of Prescription could have been filed as early as September 27, 2006.

**94.**    Defendant Babcock's costly efforts purportedly undertaken to protect Day and Ripka

from personal liability (his primary duty) served absolutely no use whatsoever in the case's final disposition.  They may, however, have provided some of the funds to enable Defendant Babcock to purchase a new airplane.

95.     Plaintiffs allege upon information and belief that Defendant Babcock, either individually or through one (1) or more of the named defendant entities with which he is or was affiliated, was insured by a policy of malpractice insurance issued by Defendant Westport Insurance Corporation.

96.     Plaintiffs allege Defendant Babcock's malpractice coverage was in place at all times herein relevant, such that the acts of professional malpractice, breach of fiduciary duty, and other attendant misconduct herein alleged are properly compensable to the Plaintiffs by Defendant Westport Insurance Corporation.

## T I M E L I N E S S

97.     Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through Ninety-Six (96), in their entirety, as if fully copied *in extenso* herein.

98.     Plaintiffs specifically plead the timeliness of their action against Defendant Babcock, *et al.*, upon the basis and authority of Louisiana law as applied to legal malpractice actions.

99.     Although La. R.S. 9:5605(A) sets forth a one (1) year prescriptive period and three (3) year peremptive period for institution of a legal malpractice claim, Louisiana's courts have consistently held these limitation periods are suspended until the lawyer's representation of the client is terminated.

100.    The Louisiana Supreme Court has consistently held that the requisite harm for purposes of prescription on a malpractice claim begins to accrue when the plaintiff begins to incur legal expenses as a result of investigating and correcting the malpractice.  <u>Henry v. Duane Morris,</u>

LLP, 06-30194, p. *3 (C.A.5 La. 12/12/06), -- F.3d ---, 210 Fed.Appx. 356, 2006 WL 3687088, citing <u>Harvey v. Dixie Graphics, Inc.</u>, 593 So.2d 351, 355 (La. 1992).

**101.**    This principle is similarly applied to peremption: "The peremption period begins to run when a client knows or should have known that a lawyer's actions or inaction may cause the client to incur damages, thereby creating a cause of action for legal malpractice."   <u>Davis v. Conroy</u>, 09-142, p. *6 (La.App. 5 Cir. 10/13/09), 27 So.3d 869, 873.

**102.**    In <u>Beach v. Continental Cas. Co.</u>, 2009-108 (La.App. 3 Cir. 6/3/09), 11 So.3d 715, our Third Circuit opined: "A party should not be required to file a malpractice suit against his attorney every time a defense is raised in the trial court and denied." <u>Beach</u> at 719.

**103.**    Thus, although the exception which finally disposed of the Dawsons' tort claims against Day and Ripka could have been filed in response to <u>Dawson II</u> (e.g., September 27, 2006), the actual cause of action arising from failing to file this exception would not come into existence until the Day and Ripka Exception was granted in July 2011.

**104.**    Plaintiffs specifically allege the operative prescriptive date for their claims against Babcock, *et al* would be, at the earliest, June 30, 2012—one (1) year after the Trial Court's Written Reason for Judgment were signed granting the Day and Ripka Exception.

**105.**    Plaintiffs show the Trial Court's Written Reasons for Judgment were signed on June 30, 2011; however, those Reasons were not promulgated unto the litigants until on or about July 14, 2011; thereafter, the parties prepared a Proposed Final Judgment which the Court signed at a point sometime later in the month of July 2011.

**106.**    Plaintiffs would respectfully aver a diversity action based on attorney malpractice is determined by the federal court upon the basis of state substantive law.  See, e.g., <u>Banker v. Nighswander, Martin & Mitchell</u>, 37 F.3d 866, 871 (2d Cir.1994), citing <u>Erie R. Co. v.</u>

Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

**107.**     As is outlined above, Louisiana's substantive law suspends the running of the prescriptive and peremptive periods of La. R.S. 9:5605 until "a reasonable person would have been put on notice that his attorneys committed malpractice."  Beach at 720.

**108.**     Plaintiffs specifically allege they were not "put on notice" of Babcock's malpractice until, at the earliest, the Trial Court's June 30, 2011, Written Reasons for Judgment granting the Day and Ripka Exception of Prescription dismissing the Dawsons' claims.

**109.**     Plaintiffs additionally show the factual predicate outlined above sets forth a "breach of fiduciary duty" claim against Defendant Babcock, *et al.*, thereby presenting a claim which falls outside the purview of strictly-defined legal malpractice for purposes of La. R.S. 9:5605.  See, *e.g.*, Davis v. Parker, 58 F.3d 183, 191 n. 10 (5th Cir. 1995).

## D A M A G E S

**110.**     The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through One hundred nine (109), in their entirety, as if fully copied *in extenso* herein.

**111.**     As a direct and proximate result of the said acts of Defendants Babcock Law Firm, LLC, Babcock Partners, LLC, Stephen Babcock, APLC, and/or Timothy Stephen Babcock, Esq., in their respective individual and/or corporate capacities as Plaintiffs' former counsel, the Plaintiffs Forever Green, Day, and Ripka have suffered the following injuries and damages and losses:

    A.     Attorney fees paid for unnecessary and/or unneeded legal services;

    B.     Attorney fees paid for work promised but not actually performed;

    C.     Attorney fees paid for work performed in an intentional and/or grossly negligent manner;

    D.     Past, present, and future attorney fees paid to rectify and correct tactical mistakes and errors made by Defendants;

E.      Past, present, and future costs of litigation:

    i.          Expert Witness Fees;

    ii.         Court Costs;

    iii.        Filing Fees;

    iv.        Copying Fees;

    v.         Other "hard costs" associated with Defendants' protracted three (3) year litigation of Dawson II;

F.      Loss of potential business earnings;

G.      Loss of a chance of business success;

H.      Past, present and future mental anguish and anxiety (as to Plaintiffs Day and Ripka only);

I.      Past, present, and future emotional distress (as to Plaintiffs Day and Ripka only);

J.      Past, present and future lost wages and diminished earning capacity (as to Plaintiffs Day and Ripka only);

K.      Past, present, and future loss of enjoyment of life (as to Plaintiffs Day and Ripka only);

L.      Such other damages which were caused by the aforesaid facts and which were sustained by the Plaintiffs Forever Green, Day, and Ripka.

**112.**   Plaintiffs specifically allege their damages exceed seventy-five thousand dollars ($75,000.00).

**113.**   Plaintiffs allege and aver they suffered grave financial losses both directly through the payment of attorney fees for unnecessary and unneeded work, and they suffered additional losses (both individually and through the Forever Green corporation) where the underlying litigation was artificially prolonged by the failure of Defendants to raise a necessary and wholly dispositive Exception of Prescription.

## C O U N T I
### (Legal Malpractice of Defendants)

**114.**    The Plaintiffs adopt and restate those allegations contained in Paragraphs One (1) through One hundred thirteen (113), in their entirety, as if fully copied *in extenso* herein.

**115.**    Plaintiffs suggest the three (3) part test for legal malpractice as set forth by the Louisiana Supreme Court is applicable to the facts as set forth above where: (1) there was an attorney-client relationship; (2) the attorney was negligent in his representation of the plaintiff; and (3) plaintiff sustained a loss as a result of the attorney's negligence.  See, *e.g.*, Costello v. Hardy, 03–1146 (La.1/21/04), 864 So.2d 129, as cited in MB Industries, LLC v. CNA Ins. Co., 2010-321, p. *3 (La.App. 3 Cir. 11/3/10), 52 So.3d 168, 171.

**116.**    The Plaintiffs show that at all times herein relevant, the Defendants were engaged, retained, and/or hired as legal counsel for Plaintiffs Forever Green, Day, and Ripka.

**117.**    Defendant Babcock, *et al.*, was negligent in providing the said representation, where Defendants failed to advance an Exception of Prescription which would have wholly dismissed the underlying suit's claim for damages against Day and Ripka in their respective personal capacities.

**118.**    The Plaintiffs suffered immeasurable loss as a result of this negligence, including, to-wit, those elements of damages which are set forth above.

**119.**    As a direct and proximate consequence of the outrageous and unconscionable acts and omissions on the part of the Defendants as described above, Defendants intentionally inflicted emotional distress upon Plaintiffs Day and Ripka.

   **WHEREFORE**, in consideration of the above and foregoing facts and circumstances as alleged, the Plaintiffs now respectfully pray and request that this Honorable Court:

   A.    Award compensatory damages to the Plaintiff and against the Defendants, jointly

and severally;

B.    Award special damages to the Plaintiff and against the Defendant, jointly and severally;

C.    Award such other and further relief as this Court may deem appropriate; and,

D.    Issue a court order directing and convening and empanelling a jury to consider the merits of the claims herein.

Dated: September 16, 2011.
Baton Rouge, Louisiana

Respectfully Submitted,

**Law Office of J. Christopher Alexander, Sr., LLC**
Attorney and Counselor at Law

  /s/
J. Christopher Alexander, Sr., Esq.
Louisiana Bar Roll No.: 26,591
3751 Government Street, Suite "A"
Baton Rouge, Louisiana 70806
225-761-9456 (telephone)
225-761-7899 (facsimile)
jca@jcalaw.us
Counsel for Plaintiffs

**WAIVERS / SUMMONS SENT TO:**

**Babcock Law Firm, LLC**
*Through Its Agent for Service:*
Stephen Babcock, Esq.
4000 S. Sherwood Forest Blvd., Suite 506
Baton Rouge, Louisiana 70816

**Babcock Partners, LLC**
*Through Its Agent for Service:*
Stephen Babcock, Esq.
4000 S. Sherwood Forest Blvd., Suite 506
Baton Rouge, Louisiana 70816

**Stephen Babcock, APLC**
*Through Its Agent for Service:*
Stephen Babcock, Esq.
4000 S. Sherwood Forest Blvd., Suite 506
Baton Rouge, Louisiana 70816

**Westport Insurance Corporation**
*Through the Louisiana Secretary of State*
J. Thomas "Tom" Schedler
8585 Archives Avenue
Baton Rouge, Louisiana 70809

**Timothy Stephen Babcock, Esq.**
4000 S. Sherwood Forest Blvd., Suite 506
Baton Rouge, Louisiana 70816