# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FOREVER GREEN ATHLETIC           CIVIL ACTION
FIELDS, INC, et al.

VERSUS                          NO. 11-633-JJB-RLB

BABCOCK LAW FIRM, LLC, et al.

---

## RULING ON DEFENDANTS' MOTION TO COMPEL

---

      Before the Court is a renewed Motion to Compel ("Motion") filed by Defendants,

Babcock Law Firm, Timothy Stephen Babcock, Stephen Babcock APLC, Babcock Partners,

LLC and Westport Insurance Corporation ("Babcock"), on October 9, 2013 (R. Doc. 46). In its

Motion, Babcock asks the Court to compel Plaintiffs, Keith Day, David Ripka and Forever

Green Athletic Fields, Inc. ("Plaintiffs"), to produce documents responsive to its discovery

requests that Plaintiffs withheld on the basis of attorney client privilege and work product

protection. (R. Doc. 46). Babcock also moves the Court to compel a non-party, attorney Eric

Miller of the Kullman Firm ("Miller"), to produce documents responsive to Babcock's Rule 45

subpoena duces tecum. Miller refused to produce the subpoenaed documents based on the

attorney client privilege and work product protection.

      Plaintiffs filed a response ("Opposition") to oppose production of the documents

requested from them and to raise objections to the subpoena directed to Miller, their former

attorney. (R. Doc. 18).[1] Ordinarily, Plaintiffs could not object to a subpoena issued to a

---

[1] Babcock filed a previous Motion to Compel, which was only directed at Plaintiffs and sought production of the same documents at issue here. (R. Doc. 16). The Court denied that Motion on procedural grounds, without ruling on the substantive issues. (R. Doc. 43). After curing the procedural defects described by the Court's Ruling (R. Doc. 43), Defendants' re-urged their Motion to Compel (R. Doc. 46). At the parties' request, the Court will adopt by

nonparty.  Nonetheless, Plaintiffs do have standing to raise objections to the subpoena directed to their former attorney because they claim a "privilege with respect to the materials subpoenaed" — specifically, the attorney client privilege and work product protection. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Richardson v. Axion Logistics, LLC*, No. 13-302, 2013 WL 5554641, at *2 (M.D. La. Oct. 7, 2013) ("if a Rule 45 subpoena seeks privileged information belonging to a party to the suit, that party has standing to challenge it, even if the subpoena is directed at a non-party"); *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *6 (M.D. La. Sept. 22, 2011) (noting plaintiff has standing to "object to a Rule 45 subpoena directed to a non-party on the basis of some personal right or privilege that she has in the requested records, such as the attorney-client privilege").

The appropriate procedure to compel non-parties, such as Miller, to produce documents is through a subpoena, as required by Rule 45 of the Federal Rules of Civil Procedure.  "It is only after the individuals or entities object on grounds of privilege or otherwise fail to produce . . . that the Court will consider a motion . . . [to] compel the entity to produce the documents pursuant to Rule 45 . . ." *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006).  Miller was served with the Rule 45 subpoena on September 4, 2013. (R. Doc. 46-2).  On September 19, 2013, Miller objected to the subpoena by asserting the attorney client privilege and work product protection in a written declaration ("Miller declaration," R. Doc. 46-3).  Babcock then appropriately moved the Court to compel production of the subpoenaed documents.  Miller received service of the Motion to Compel on November 15, 2013 (R. Doc. 49).  As of this Order, Miller has not entered an appearance or otherwise responded to Babcock's Motion to Compel.  Since Miller was afforded an opportunity to respond to the Motion to

reference their substantive arguments presented in connection with Defendants' previous Motion to Compel.  (Defs.' Mot., R. Doc. 16); (Pls.' Opp., R. Doc. 18); (Defs.' Reply, R. Doc. 21).

Compel, the Court may freely issue an order commanding him to produce any of the requested documents, despite his non-appearance. *See Andrade v. Cooper/T. Smith Stevedoring Co. Inc.*, No. 06-907, 2009 WL 5178301, at *2-3 (M.D. La. Dec. 19, 2009) (granting defendant's motion to compel non-party to produce documents responsive to Rule 45 subpoena where non-party was served with, but never responded to motion to compel); *Strouder v. M&A Tech., Inc.*, No. 10-2518, 2010 WL 4852280, at *2 (D. Colo. Nov. 19, 2010) (same).

For the reasons discussed below, Babcock's Motion to Compel (R. Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND

In this action Plaintiffs allege their former attorney, Babcock, committed legal malpractice during its representation of Plaintiffs during a prior litigation and is liable for damages. The underlying litigation began on May 3, 2005 when two former employees, Charles and Kelli Dawson ("the Dawsons"), sued Keith Day and David Ripka in Louisiana state court for "defamation and intentional tortious interference with contractual relations." (R. Doc. 4 at 7). In the same action, the Dawsons sued Day and Ripka's company, Forever Green, for breach of their employment contracts. The suit was titled *Dawson, et al v. Forever Green, et al* ("*Dawson I*"), No. 531, 941 (19th JDC, East Baton Rouge Parish). (R. Doc. 4 at 1).

On August 25, 2005, Defendant, Timothy Stephen Babcock, formally enrolled as counsel for Forever Green, Day and Ripka in *Dawson I*. (R. Doc. 4 at 9). The following day, on August 26, 2005, Babcock signed a joint dismissal agreement with the Dawsons' counsel and *Dawson I* was dismissed without prejudice. (R. Doc. 4 at 2). On September 27, 2006 — 397 days later — the Dawsons refiled their action against Plaintiffs in the same Louisiana state court ("*Dawson*

3

*II*"). (R. Doc. 4 at 2).[2] Aside from the Dawsons' failure to allege their defamation claim against Day and Ripka, *Dawson II* alleged the exact same causes of action against Forever Green, Day and Ripka. (R. Doc. 4 at ¶ 48). After *Dawson II* was filed, Forever Green filed a reconventional demand against Charles Dawson.

Babcock again served as Plaintiffs' legal counsel during *Dawson II*, until he withdrew from representation on May 21, 2009 — allegedly over disputed legal fees. (R. Doc. 4 at 3, 12, 13; R. Doc. 16-3 at 11). At the time *Dawson II* commenced, the Dawsons' personal tort claims against Day and Ripka had prescribed, as indicated in the state court's order dismissing those claims at trial. (R. Doc. 16-10). Nonetheless, during his representation of Plaintiffs, Babcock did not file an exception of prescription to dismiss the prescribed tort claims against Day and Ripka. (R. Doc. 4 at 3).

On May 21, 2009, Eric Miller of The Kullman Firm was substituted as counsel for Forever Green, Day and Ripka in *Dawson II*. (R. Doc. 16-4). On November 12, 2010, after almost 18 months of representation, Eric Miller moved to withdraw as counsel of record for Forever Green, Day and Ripka based on their failure to pay legal fees. (R. Doc. 16-7). On February 7, 2011, the state court granted Eric Miller's Motion to Withdraw. (R. Doc. 16-8). An exception of prescription was also not filed while Miller acted as Plaintiffs' counsel of record in *Dawson II*. Plaintiffs enrolled new counsel, Christopher Alexander, Sr., on February 7, 2011. Alexander represented them for the remainder of *Dawson II*. (R. Doc. 16-8).

The *Dawson II* trial began March 1, 2011. On the same day, Alexander filed an Exception of Prescription on behalf of Day and Ripka. The Exception sought dismissal of the personal tort claims based on the one year liberative prescriptive period generally applicable to

---

[2] The second suit was titled *Dawson, et al v. Forever Green, et al* ("*Dawson II*"), No. 547, 844 (19th JDC, East Baton Rouge Parish). (R. Doc. 4 at 1).

4

tort actions in Louisiana. (R. Doc. 4 at 13-14).[3]  On June 30, 2011 the Exception was granted at

plaintiff's cost. (R. Doc. 16-10 at 4).  In its Ruling and Written Reason, the trial court noted that

the "best evidence" of prescription was "the first suit and the petition therein" (*Dawson I*). (R.

Doc. 16-10 at 4).

Throughout *Dawson I* and *Dawson II*, Plaintiffs were "simultaneously represented by

William H. Tobolsky, Esq., a New Jersey-licensed attorney who represented Plaintiffs in other

ongoing business concerns/litigation." (R. Doc. 18 at 3).  Although Plaintiffs continuously

retained Tobolsky for legal services, he did not enroll as counsel of record in either *Dawson I* or

*Dawson II*.  Plaintiffs represent that Tobolsky "received periodic status updates" on the *Dawson*

litigations for the purpose of tailoring Forever Green's "corporate strategies" and advising

"Ripka and Day in other legal matters." (R. Doc. 18 at 3).

## II.    PROCEDURAL HISTORY

On September 6, 2011, Plaintiffs filed this legal malpractice action against their former

attorney, Stephen Timothy Babcock, and his associated firm. (R. Doc. 1).  To state a claim,

Plaintiffs must prove, among other things, that their attorney was negligent in his representation

and that negligence caused Plaintiffs' injuries and claimed damages. *See Costello v. Hardy*, 864

So.2d 129, 138 (La. 1/21/04).  Negligence in this context is failing "to exercise at least that

degree of care, skill, and diligence which is exercised by prudent practicing attorneys in [the

attorney's] locality." *Ramp v. St. Paul Fire & Marine Ins. Co.*, 269 So.2d 239, 244 (La. 1972).

---

[3] Under Louisiana law, intentional interference with a contractual relationship is a tort claim subject to a one year liberative prescriptive period, which commences to run on the day of tortious conduct. *See SMP Sales Mgmt. Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 559 (5th Cir. 1992) (intentional interference with a contractual relationship is a tort action subject to a one year prescriptive period); La. Civ. C. art. 3492 (torts are subject to a one year prescriptive period).  However, commencing an action "in a court of competent jurisdiction and venue" interrupts prescription as to all defendants served within the prescriptive period. La. Civ. C. art. 3462. The interruption "continues as long as the suit is pending." La. Civ. C. art. 3463.

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 5 of 38

Here, the negligent conduct alleged is Babcock's failure to file "a simple Exception of Prescription which was glaringly obvious on the face of the Dawson II pleading and which would have completely dismissed Keith Day and David Ripka individually." (R. Doc. 1 at 3). Plaintiffs claim that Babcock's alleged negligence caused them to incur numerous damages, which include attorney's fees paid to Babcock, as well as "[p]ast, present, and future attorney fees paid" to subsequent attorneys, Eric Miller and Charles Alexander, hired "to rectify and correct" Babcock's "tactical mistakes and errors." (R. Doc. 1 at 16). Plaintiffs also claim Babcock is liable to them for lost business opportunities, lost wages and earning capacity, lost potential business earnings, lost chance of business success, lost enjoyment of life, mental anguish, anxiety and emotional distress. (R. Doc. 4 at 18).

In May of 2012, Defendants issued two subpoenas duces tecum to non-parties, Eric Miller of The Kullman Firm ("Miller") and William Tobolsky of Tobolsky Law ("Tobolsky"), to obtain documents maintained by Miller and Tobolsky during their representation of Plaintiffs during *Dawson I* and *Dawson II*. (Miller Subpoena, R. Doc. 16-2 at 1-2); (Tobolsky Subpoena, R. Doc. 16-2 at 3-4). Both subpoenas requested production of: "***A certified copy of your complete file***, including all documents, related to your representation of (and/or involvement with Forever Green Athletic Fields, Inc., Keith Day and David Ripka in the [underlying *Dawson* litigation] . . . ." (R. Doc. 16-2 at 6).[4] Both Miller and Tobolsky responded by refusing to produce the documents as protected under either the attorney client privilege or work product protection. (Kullman Decl., R. Doc. 16-3 at 1); (Tobolsky Privilege Log, R. Doc. 16-3 at 2-6).

---

[4] The subpoenas clarified that the "term 'documents' shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, electronic or graphic matter of every kind and nature, whether an original or a copy, including all attachments and appendices thereto." (R. Doc. 16-2 at 6). The subpoenas then gave specific examples of materials which might fall under this broad definition.

After not receiving the subpoenaed documents, Babcock moved to compel ("first Motion to Compel") their production. (R. Doc. 16). In connection with the first Motion, Babcock presented the Court with an itemized list of 12 categories of documents maintained by Miller and Tobolsky, as opposed to their "complete files." (R. Doc. 38).[5] Both parties presented oral argument to the Court at a hearing before the United States Magistrate Judge. (R. Doc. 34). At oral argument, the parties advised that Plaintiffs agreed to obtain and produce Item Nos. 3-8 of the 12 categories of documents, which concern invoices and billing records generated by Miller and Tobolsky during the *Dawson* litigation. (R. Doc. 35 at 2).

Only those documents described in Item Nos. 1-2 and 9-12 remained at issue. (R. Doc. 38). Nonetheless, the Court could not rule on the substantive issues relevant to Item Nos. 1-2 and 9-12 due to a procedural defect in Defendants' subpoenas to Kullman and Tobolsky. (R. Doc. 43). On August 30, 2013, the Court issued a Ruling denying Babcock's first Motion to Compel on procedural grounds. (R. Doc. 43). During a telephone conference, the parties later informed the Court that Babcock would re-file its Motion to Compel and the parties would adopt by reference the arguments contained in their memoranda and made at oral argument on the first Motion to Compel.

On August 30, 2013, Babcock issued Requests for Production of Documents to Plaintiffs. (R. Doc. 46-4). Request for Production No. 1 asks Plaintiffs to produce their complete files maintained by William Tobolsky of Tobolsky Law and Eric Miller of The Kullman Firm in connection with their representation of Plaintiffs in *Dawson II*. (R. Doc. 46-4). Plaintiffs refused to produce the requested documents pursuant to the attorney client privilege and work product protection. In connection with the documents maintained by William Tobolsky, Tobolsky

---

[5]Defendants' categorical list of disputed documents was filed into the record as Joint Exhibit 1 (R. Doc. 38) during the Court's July 23, 2013 hearing (R. Doc. 34) on Defendants' Motion to Compel (R. Doc. 16).

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 7 of 38

provided a privilege log describing the withheld documents. (R. Doc. 16-3). Babcock then served Eric Miller with a Rule 45 subpoena on September 4, 2013. (R. Doc. 46-2).[6] Miller responded to the subpoena by issuing a declaration in which he described 8 categories of withheld material and asserted the attorney client privilege and work product protection. (R. Doc. 16-4).

After not receiving any of the requested documents from Plaintiffs or Miller, Babcock renewed its Motion to Compel (R. Doc. 46) on October 9, 2013. Babcock asks the Court for an order compelling Miller and Plaintiffs to produce those documents remaining at issue in its first Motion to Compel. Specifically, Babcock moves to compel Miller to produce the following documents withheld as privileged:

> **Item No. 1**
> All written communications (including letters, emails, memorandums, etc.) exchanged between The Kullman Firm **and** David Ripka, Keith Day, Tobolsky Law and/or Chris Alexander relating in any way to the [*Dawson II* litigation] . . . .
>
> **Item No. 9**
> All attorney's notes and drafts generated by The Kullman Firm that relate in any way to the [*Dawson II* litigation] . . . .
>
> **Item No. 11**
> All 'drafts and duplicates' maintained by The Kullman Firm, as indicated by its Declaration, relating in any way to the [*Dawson II* litigation] . . . .
>
> **Item No. 12**
> The withdrawal documents/exhibits filed in camera by the Kullman Firm in the [*Dawson II* litigation] . . . .

(R. Doc. 38 at 1, 3).

Additionally, Babcock asks the Court to compel Plaintiffs to produce the following withheld documents relating to Tobolsky's representation during the *Dawson II* litigation:

---

[6] Babcock chose not to re-issue a subpoena to Tobolsky.

**Item No. 2**
All written communications (including letters, emails, memorandums, etc.)
exchanged between Tobolsky Law **and** David Ripka, Keith Day, The Kullman
Firm and/or Chris Alexander relating in any way to the [*Dawson II* litigation] . . . .

**Item No. 10**
All attorney's notes and drafts generated by Tobolsky that relate in any way to the
[*Dawson II* litigation] . . . .

(Joint Exh. 1, R. Doc. 38 at 1, 3).

## III.   PARTIES' ARGUMENTS

Babcock argues that Plaintiffs have waived any attorney client and work product
privileges for all materials maintained by either Miller or Tobolsky by: (1) placing these
communications "at issue" in the present litigation; and (2) listing Eric Miller and William
Tobolsky as witnesses who "will testify to the viability of the facially obvious prescription
exception." (R. Doc. 16-1 at 12).  Plaintiffs respond that the privileges have not been waived
because their claims will not force them to inevitably "draw upon a privileged communication at
trial in order to prevail." (R. Doc. 18 at 6) (citations omitted).  Plaintiffs further suggest that
Babcock has not met the requisite showing of "compelling need" and "undue hardship" to justify
a waiver of work product.

## IV.   LAW AND ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery
regarding any nonprivileged matter that is relevant to any party's claim or defense."  A relevant
discovery request seeks information that is "either admissible is reasonably calculated to lead to
the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894
F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)) (alterations in original).
Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege.
Fed. R. Civ. P. 26(b)(1).

9

Here, Plaintiffs have asserted two privileges in withholding documents in discovery: the attorney client privilege and the work-product protection. Neither party disputes that the privileges are applicable. Therefore, the issue before the Court is whether a waiver of either the attorney client privilege or work product protection has occurred with respect to each category of requested documents.

## A.    Attorney Client Privilege

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. The Louisiana Code of Evidence states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication . . . .

La. Code Evid. art. 506(B).[7] Under Louisiana law, both the client and his or her lawyer or the lawyer's representative may claim the privilege. La. Code Evid. art. 506(D). However, as the holder of the privilege, only the client may waive it. The party asserting the privilege has the burden of proving its applicability and that a waiver has not occurred. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. 9/9/87).

The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). As such, when the privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as

---

[7] Louisiana law must govern the Courts determination of the scope and applicability of the attorney client privilege. Nonetheless, parts of the Court's Ruling cite federal cases as merely instructive, given the "federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege." *Akins v. Worley Catastrophe Response, LLC*, No. 12-2401, 2013 WL 796095, at *11 (E.D. La. March 4, 2013); *see also Soriano v. Treasure Chest Casino, Inc.*, No. 95-3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996) (federal "common law and Louisiana statutory law are materially similar in this case in regards to attorney-client privilege").

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 10 of 38

a waiver of the privilege." *Conkling*, 883 F.2d at 434; *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 4186884, at *4 (E.D. La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999) (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield."). In other words, a waiver occurs when the holder pleads a claim or defense in such a way that it will inevitably have to "draw upon a privileged communication in order to prevail." *Conono Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998).

The "at issue" waiver is rooted in fairness — when the holder places the information at issue to his own benefit, allowing "the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling*, 883 F.2d at 434. Ultimately, the question is whether the privilege holder has committed itself to a course of action that will require the disclosure of a privileged communication. *Smith*, 513 So.2d at 1146.

## B.  Work Product Protection

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product protection is broader in scope and reach than the attorney client privilege. The attorney client privilege "extends only to client communications, while the work product protection encompasses much that has its source outside client communications." *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (S.D. Tex. 2009).

11

Work product protections "are held by both the attorney as well as the client" and may be asserted and waived by either. *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. The party seeking disclosure of opinion work product is subject to a higher burden because opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Conoco Inc.*, 191 F.R.D. at 118 (quotations omitted). This protection is not absolute, however. Like the attorney client privilege, opinion work product may be disclosed when the holder waives the protection by placing the protected material "at issue" in the litigation. *Id.* at 118. The party seeking discovery of opinion work product must show a compelling need for the information and an inability to obtain it otherwise. Fed. R. Civ. P. 26(b)(3).

## V. DISCUSSION

### A. Plaintiffs' Waiver of the Attorney Client Privilege and Work Product Protection for Materials Withheld by Eric Miller as Requested in Item Nos. 1, 9 and 11

The communications responsive to Item No. 1 are protected from disclosure by the attorney client privilege and may not be produced absent the client's waiver. Specifically, Item No. 1 asks Eric Miller to produce written communications between himself, Plaintiffs, William Tobolsky or Chris Alexander that concern the underlying litigation. (R. Doc. 38 at 1).[8]

The materials requested in Item Nos. 9 and 11 constitute attorney work product and may not be discovered absent a waiver by the client and the attorney. Item No. 9 seeks attorney notes and drafts generated by Miller in connection with *Dawson II*. Babcock also subpoenaed the

---

[8] The attorney client privilege applies to communications between "the client . . . and the client's lawyer" and "[a]mong lawyers and their representatives representing the same client" when made for the "purpose of facilitating the rendition of professional legal services." La. C. Evid. art. 506(B)(1), (5). Although neither party disputes it, the Court finds the subpoenaed communications fall within the attorney-client privilege because they were made between Eric Miller and either his clients or other attorneys representing his clients to obtain legal services.

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 12 of 38

production of Miller's "drafts and duplicates" in Item No. 11. (Item Nos. 9, 11 and 12 of Joint Exh. 1, R. Doc. 38).[9]

Babcock argues that Plaintiffs have waived any applicable privilege by placing the subject matter of the subpoenaed documents at issue in this litigation. Particularly, Babcock claims that Plaintiffs' will be forced to draw on privilege information to establish the following: (1) the timeliness of the instant legal malpractice claim; (2) whether the filing of an exception would have ended the entire underlying litigation, or merely the personal tort claims against Day and Ripka; and (3) the actual cause of their alleged damages. Babcock further suggests that by listing Miller as a potential trial witness Plaintiffs have waived the attorney client privilege and work product protection over any information concerning the subject matter of his testimony. The Court will separately address each of these arguments below.

However, before considering the substantive arguments relevant to the materials requested in Item No. 1, the Court will first address the scope of Item No. 1.

i.    **Communications between Miller and Alexander responsive to Item No. 1**

Among the communications sought in Item No. 1 are those between Miller and Chris Alexander that relate to *Dawson II*. Chris Alexander currently represents Plaintiffs in this litigation. Alexander has represented Plaintiffs since February 7, 2011, when he succeeded Eric Miller as their counsel of record in *Dawson II*. (R. Doc. 16-8).[10] Babcock based this request on the categories of withheld documents in Miller's declaration. However, a review of the

_____

[9] The parties recognized that Item Nos. 9 and 11 cover a category of withheld documents identified by Miller in his declaration. (R. Doc. 16-3 at 1). Based on Miller's declaration, which describes the withheld documents only as "attorney notes and drafts" and "drafts and duplicates," the parties were unable to provide the Court with a detailed description of their contents. Nonetheless, the parties did clarify that Item Nos. 9 and 11 were not intended to cover communications, as those documents would be responsive to Item No. 1. Therefore, the only potentially applicable privilege to the documents encompassed by Item Nos. 9 and 11 would be work product.

[10] When the *Dawson II* trial commenced on March 7, 2011 — less than one month after Plaintiffs retained Alexander — Alexander filed the exception of prescription that eventually disposed of the personal tort claims against Day and Ripka.

13

declaration indicates the only withheld communications occurred between Miller and either Plaintiffs or William Tobolsky — not Alexander. Moreover, Babcock's Motion focuses on Plaintiffs' communications with Miller and Tobolsky; communications between Miller and Alexander were only briefly mentioned during oral argument. Aside from that, there is little to no argument offered by Babcock to support a waiver of the attorney client privilege as to Miller's communications with Alexander. Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** to the extent Item No. 1 seeks production of communications between Miller and Alexander.

The remaining communications requested in Item No. 1 are those between Miller and either Plaintiffs or William Tobolsky. Because Tobolsky is not involved in this lawsuit and Miller no longer represents Plaintiffs, a same waiver analysis will apply to Miller's communications with both Plaintiffs and Tobolsky that relate to *Dawson II*.

### ii. Privileged communications and work product materials regarding peremption of Plaintiffs' legal malpractice claim responsive to Item Nos. 1, 9 and 11

Babcock claims that Plaintiffs have waived the attorney client privilege and work product protection by placing the timeliness of the instant malpractice claim at issue. Louisiana Revised Statute 9:5605(A) requires a plaintiff to file a legal malpractice claim within a year of the alleged act or within a year of the date the act is or should have been discovered by the client. In any event, regardless of the client's discovery, the suit must commence within 3 years of the date the alleged malpractice occurred. La. Rev. Stat. § 9:5605(A); *Jenkins v. Starns*, 85 So.3d 612, 626 (La. 1/24/12) (discussing La. Rev. Stat. § 9:5605).[11]

---

[11] These periods are peremptive, meaning they may not be renounced, tolled or suspended to extend the time for filing beyond the one or three year statutory periods. La. Rev. Stat. § 9:5605(B) (describing the one and three year periods as peremptive within the meaning of article 3458); La. Civ. C. art. 3458 and 3461 (defining peremptive periods). Once the applicable period runs, the cause of action no longer exists. *See Reeder v. North*, 701 So.2d

14

In their Complaint, "Plaintiffs specifically allege they were not 'put on notice' of Babcock's malpractice" — and thus the one-year peremptive period did not commence — "until, at the earliest, the Trial Court's June 30, 2011, Written Reasons for Judgment granting the Day and Ripka Exception of Prescription dismissing the Dawson's claims." (R. Doc. 4 at 17). In response, Babcock argues that Plaintiffs have waived the attorney client and work product privileges by placing their discovery of Babcock's alleged malpractice for purposes of commencing the one year peremptive period at issue. Babcock suggests that the "activities and opinions of Plaintiffs' other attorneys in the underlying litigation will evidence whether and when Plaintiffs and/or their attorneys had actual or constructive knowledge of the alleged malpractice to trigger preemption." (R. Doc. 16-1 at 21).

The statute's one year peremptive period does not begin to run until the client is "put on notice," of the attorney's negligence through actual or constructive knowledge. Actual or constructive knowledge occurs when the client: (1) actually knows facts which would enable them to state a cause of action for malpractice; or (2) has constructive knowledge of facts sufficient to place a reasonable person on notice that malpractice may have been committed. *See Mason v. Garrett*, 96 So.3d 650, 656-57 (La. App. 4 Cir. 6/13/12) (clients had knowledge of malpractice two years earlier than alleged based in part on clients' communications with another attorney indicating defendant-attorney may have committed malpractice). The one year period also commences to run when, regardless of the client's actual knowledge, the malpractice is discovered by the client's subsequent attorney whose knowledge is imputed to the client. *See Rondeno v. Law Office of William S. Vincent, Jr.*, 111 So.3d 515, 521 (La. App. 4 Cir. 3/13/13)

---

1291, 1298 (La. 10/21/97) (Peremption "extinguishes or destroys the right . . . nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable.") (quotations omitted).

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 15 of 38

("Notice to the client's attorney is imputed to the client for purposes of determining when prescription begins to run" in a legal malpractice claim.).

The Court agrees with Babcock that Plaintiffs have sufficiently placed the running of the one year peremptive period at issue by claiming they were not put on notice of Babcock's malpractice until June of 2011. Attorney client communications will be relied on by the parties and the fact-finder to establish when Plaintiffs had actual or constructive knowledge of the instant malpractice claim and the attorney client privilege is waived with respect to those communications. *See Asset Funding Grp. v Adams & Reese, LLP*, No. 07-2965, 2008 WL 927937, at *7 (E.D. La. April 4, 2008) (plaintiff waived attorney client privilege as to communications with its other attorney regarding plaintiff's knowledge of a pre-existing environmental condition because plaintiff interjected the issue into litigation by claiming it was unaware of the environmental condition); *Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C. 1983) ("the plaintiff has waived the [attorney client] privilege because the information which the defendant seeks is necessary to resolve the precise statute of limitations issue which the plaintiff has interjected into the case."). Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 1 to the extent any of the withheld communications between Eric Miller and either Plaintiffs or William Tobolsky concerning Plaintiffs' actual or constructive knowledge of Babcock's alleged malpractice — the failure to file the exception of prescription.

Likewise, the Court finds Plaintiffs have waived any work product protection applicable to Miller's notes, drafts and duplicates concerning Miller's knowledge of the malpractice claim.[12] In the legal malpractice context: "The jurisprudence has consistently held that the

---

[12] Miller's knowledge of the malpractice claim would include any actual knowledge, analysis or consideration of the filing of an exception of prescription in *Dawson II*.

16

knowledge of an attorney, actual or otherwise, is imputed to his or her client." *Stevison v. Charles St. Dizier, Ltd.*, 9 So.3d 978, 981 (La. App. 3 Cir. 3/25/09) (quotations omitted) (holding that malpractice claim was prescribed because second attorney became aware of the potential malpractice over a year prior to filing suit even though that information was not shared with client). Thus Miller's notes will be the only method of determining whether he actually or "otherwise" knew of facts sufficient to state a cause of action for malpractice.[13] *See Conkling*, 883 F.2d at 435 (finding a waiver of the attorney client and work product privileges and allowing defendants to "obtain all of the information relevant to their prescription defense that might be known by attorneys [of the plaintiff]" because the plaintiff "had injected into the litigation when he knew or should have known of the [cause of action].").  Therefore,

**IT IS ORDERED** that Babcock's Motion is **GRANTED** as to Item Nos. 9 and 11 to the extent any of Miller's notes, drafts or duplicates indicate his knowledge of Babcock's alleged malpractice for purposes of commencing the one year peremptive period.

### iii.  Privileged communications and attorney work product concerning Plaintiffs' desire to avoid personal liability responsive to Item Nos. 1, 9 and 11

Throughout this litigation, Plaintiffs have claimed their "sole concern was protecting themselves from personal liability" and that dismissal of the personal tort claims would have effectively ended the litigation because "they were willing to 'walk away' from Forever Green and allow the Dawson's to obtain a consent or default judgment solely against the corporation." (R. Doc. 4 at 10).  Plaintiffs suggest that they "suffered grave financial losses . . . through the payment of attorney fees for unnecessary and unneeded work . . . where the underlying litigation was artificially prolonged by the failure of Defendants to raise a necessary and wholly dispositive Exception of Prescription." (R. Doc. 4 at 18).  Babcock points out that that the

---

[13] The Plaintiffs have named Miller as a potential trial witness who will testify regarding this very issue – that the Dawsons' tort claims against Day and Ripka were facially prescribed. *See* discussion *infra* Part V.A.iv.

exception of prescription would not have resolved the Dawson's claims against Forever Green or Keith Day's reconventional demand against Charles Dawson. (R. Doc. 16-1 at 11). Nonetheless, Plaintiffs suggest that the fees attributable to the claims against Forever Green and the reconventional demand would not have accrued had they been absolved of personal liability. Babcock argues that Plaintiffs' assertion goes directly to their state of mind and places at issue any attorney-client communications concerning this subject matter.

The Court agrees with Babcock. Plaintiffs claim to have communicated their desire to avoid personal liability and their willingness to "walk away" from Forever Green to Babcock, as well as their other attorneys. (Pl.'s Resp. to Interrog. Nos. 1, 2 and 9, R. Doc. 16-13 at 6, 11-12). By making this allegation Plaintiffs have partially disclosed privileged communications with Miller and have necessarily placed those communications at issue, causing a waiver of the attorney client privilege as to all communications on the same subject matter. Any other holding would endorse using the attorney client privilege as both a sword and a shield. *See Nguyen*, 197 F.3d at 207 n.18 (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield" and that attempts at "such improper dual usage of the privilege result in a waiver by implication"). Plaintiffs' waiver, however, is limited to the attorney client privilege; it does not extend to any attorney work product regarding the same subject matter because Plaintiffs allegation only place what they communicated with their attorneys at issue. Thus,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 1 to the extent any responsive communications concern Plaintiffs' desire to avoid personal liability and/or their willingness to accept a consent or default judgment against their corporation, Forever Green.

18

### iv. Privileged communications and attorney work product that concern the subject matter of Eric Miller's expected testimony as requested in Item Nos. 1, 9 and 11

The Louisiana Supreme Court has explained that a client waives the attorney client privilege by "indicating a decision to rely on privileged evidence at trial," such as an "attorney's testimony as to a *specific communication* to the attorney." *Smith*, 513 So.2d at 1143, 1150; *see also U.S. v. Woodall*, 438 F.2d 1317, 1324 (5th Cir. 1970) ("client's offer of his own or the attorney's testimony as to a specific communication constitutes a waiver as to all other communications to the attorney on the same matter"). Other courts have held that *indicating* a client's attorney will be a witness can be sufficient grounds to find waiver of the privilege. *See Rutgard v. Haynes*, 185 F.R.D. 596, 601-02 (S.D. Cal. 1999) (plaintiff waived privilege over "documents in [non-party attorney's] file" by "indicating" his "intent" to offer the attorney's testimony on the underlying litigation at trial and defendant would "need to know" the information the attorney based his "conclusions and opinions" on for effective cross-examination); *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 295 (D. Mont. 1998) (Nationwide waived attorney client privilege by naming its non-party attorney "as an expert witness" because the attorney's expected testimony would "serve Nationwide's purposes, without permitting Dion access to all the communications" and "would unduly prejudice Dion in the prosecution of the present action.").

In their Interrogatory Responses, Plaintiffs listed Miller as a potential fact witness who may testify to Plaintiffs' interest "in eliminating Dawson's claims of personal liability" against them and "to the viability" of the "facially apparent prescription exception." (Pls.' Resp. to Interrog. Nos. 1 and 2, R. Doc. 16-13 at 6). During the hearing on Babcock's Motion to Compel, Plaintiffs' attorney indicated that Miller remains a potential trial witness. To the Court's

19

knowledge, Plaintiffs' Interrogatory Responses have not been supplemented to remove Miller from the list of potential witnesses and Plaintiffs have not otherwise stipulated that they will not introduce Miller's testimony at trial. In addition, the deadline to complete discovery has passed and will have to be extended by the Court to allow for additional discovery to take place in light of this ruling. There are no pending motions that would otherwise affect the relevance of this information or Plaintiff's perceived need to present this testimony. To disallow Babcock the opportunity to pursue discovery regarding Miller's anticipated testimony under the protection of privilege, yet allow the Plaintiffs to persist in their intent to call him as a witness, would cause the same undue prejudice concerning the court in *Dion*.

The Court finds that by indicating their intent to offer Miller's testimony to "prove" their alleged desire to avoid personal liability, Plaintiffs have waived the attorney client privilege as to any communications on that subject matter. *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 45847, at *5 (E.D. La. Feb. 2, 1995) ("privilege is waived when the party attempts to prove the claim or defense by disclosing or describing an attorney client communication" (citing *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929-31 (N.D. Cal. 1976) (plaintiff waived attorney client privilege and work product by indicating its former attorneys would testify at trail "to express their opinions as to the merits of the prior suits" *Id.* at 931))).

Likewise, Miller's proposed testimony regarding the "facially apparent prescription exception" would disclose Miller's legal theories and mental impressions of the underlying case, constituting a waiver of the work product protection.[14] *See JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 336 (N.D.W.V. 2013) ("once a client decides to call the attorneys as witnesses, the

---

[14] The Court notes that this testimony may be more properly considered testimony in the form of an opinion. *See* Fed. R. Evid. 702. If so, additional discovery and disclosure obligations may be required from the Plaintiffs. *See* Fed. R. Civ. P. 26(a)(2).

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 20 of 38

work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth."). Any other holding would give Plaintiffs "unchecked editorial control" over the evidence available to Babcock "to a degree that would practically ensure a distorted presentation" of evidence to the fact finder. *Smith*, 513 So.2d at 1144; *see also Merhige v. Gubbles*, 657 So.2d 1098, 1101 (La. App. 4 Cir. 6/29/95) (pre-trial waiver occurs when the holder indicates its intent to use privileged communications to prove a claim at trial and it would unfairly prejudice its opponent's "ability to prepare effectively for trial").

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 1 to the extent any responsive communications indicate Plaintiffs' desire to avoid personal liability and accept a default judgment against Forever Green or concern the exception of prescription in *Dawson II*; and

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item Nos. 9 and 11 to the extent any responsive materials indicate Babcock's mental impressions and legal theories regarding the viability of the underlying personal tort claims against Day and Ripka — i.e., whether those claims were viable or had prescribed.

### v. Privileged communications and attorney work product materials concerning causation, i.e., the allocation of fault and damages, responsive to Item Nos. 1, 9 and 11

"Traditional notions of causation govern in the legal malpractice setting." *Fed. Sav. & Loan Ins. Corp. v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F. Supp. 1263, 1268 (E.D. La. 1992). A legal malpractice plaintiff must prove the attorney was negligent in his representation and that his or her negligence caused the client's damages.[15] Negligence in this

---

[15] The attorney's negligence must be both the factual and legal cause of the client's injuries. The appropriate inquiry when determining factual cause is: "If the alleged loss would have resulted irrespective of any alleged negligence,

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 21 of 38

context is a lawyer's failure to exercise "at least that degree of care, skill and diligence"

exercised by "prudent practicing attorneys" in the lawyer's area. *Fed. Sav. & Loan Ins. Corp.*,

808 F. Supp. at 1268 (quotations omitted).  If the client's damages resulted from the negligence

of not just the defendant attorney tortfeasor, but of multiple joint tortfeasors, each will only be

responsible for the portion of damages caused by his or her negligence. La. Civ. C. art. 2323(A).

This requires a fact-finder to determine "the degree or percentage of fault" of all negligent

persons, including the client and any nonparties, who caused or contributed to the client's

injuries. La. Civ. C. art. 2323(A).  If the fact-finder does determine the client's damages resulted

from the negligence of not only the defendant attorney, but other nonparties as well, the

defendant attorney's share of damages must be reduced according to its percentage of fault. La.

Civ. C. art. 2324(B); *see also Lifemark Hosps., Inc. v. Jones, Walker, Waechter, Poitevent,

Carrere & Denegre*, No. 94-1258, 1999 WL 33579254, at *3 (E.D. La. June 4, 1999)

(recognizing the "[r]eduction of damages to a defendant's actual percentage of fault"

contemplated by Louisiana law and jurisprudence in a legal malpractice claim).

Here, Babcock's allegedly negligent conduct was his failure to recognize and/or file "a

simple, dispositive Peremptory Exception of Prescription" which Plaintiffs suggest "could have

been filed as early as September 27, 2006." (R. Doc. 4 at 14).  Plaintiffs claim that Babcock's

negligence caused their damages incurred throughout the entire *Dawson II* litigation, during both

Babcock's and Miller's representation.  These damages include (1) attorney's fees and litigation

---

that alleged negligence is not actionable as a substantial factor or a cause in fact." *Colonial Freight Sys. Inc. v. Adams & Reese, LLP*, No. 11-1755, 2012 WL 1570103, at *2 (E.D. La. May 3, 2012); *see also Leonard v. Reeves*, 82 So.3d 1250, 1262 (La. App. 1 Cir. 1/12/12) (plaintiff must prove that but-for his attorney's "bad advice, he would not have lost the opportunity to successfully defend Ms. Probst's claims against him").  Legal causation "requires a proximate relation" or cause "between the actions of a defendant and the harm which occurs and such relation must be substantial in character." *Sinitiere v. Lavergne*, 391 So.2d 821, 825 (La. 1980).  "A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would have not occurred." *Bennett v. Chevron Stations, Inc.*, No. 99-3415, 2000 WL 782070, at *3 (E.D. La. June 16, 2000) (quotation omitted).

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 22 of 38

costs paid to Babcock, and (2) subsequent attorney's fees and litigation costs paid to subsequent counsel to "rectify and correct tactical mistakes and errors" made by Babcock. (R. Doc. 4 at 17). Beyond legal fees, Plaintiffs claim past, present, and future (3) lost potential business earnings, (4) lost chance of business success, (5) mental anguish and anxiety, (6) lost wages and diminished earning capacity, and (7) lost enjoyment of life. (R. Doc. 4 at 17-18).

Babcock suggests that Plaintiffs have placed causation at issue by seeking "reimbursement for fees, expenses and other related damages . . . allegedly incurred as the result of a multi-year litigation that the clients relate solely to the fact that their initial attorney did not file a prescription exception that might have resulted in a dismissal of a fraction of the underlying claims." (R. Doc. 21 at 3). Plaintiffs disagree. According to them, Babcock incorrectly suggests "that clients who sue *one* of their attorneys for malpractice thereby waive the attorney client privilege with respect to *all* attorneys who represented clients in the same underlying litigation." (R. Doc. 18 at 5). Plaintiffs further argue that the cause of their alleged damages is not at issue because Babcock's act of malpractice "was already complete" by the time Plaintiffs retained Eric Miller making their communications with Miller and his work product irrelevant. (R. Doc. 18 at 7). The Court, however, is not persuaded by Plaintiffs' argument.

The allegedly negligent conduct is the failure to file a "facially obvious" exception of prescription at the outset of *Dawson II*. This negligent conduct allegedly caused Plaintiffs to incur, both during and after Babcock's representation, unnecessary attorney's fees, lost business profits, lost business opportunity, lost earning capacity and emotional distress, among other things. More than four years passed between the commencement of *Dawson II* and the filing of the exception of prescription. During that time, Babcock represented Plaintiffs as counsel of

23

record for 32 months, while Miller represented them in the same capacity for the following 21 months.  During those 4-plus years, in which Plaintiffs claim they continuously incurred damages; neither Babcock *nor Miller* filed an exception of prescription.  And because Louisiana procedure does not temporally limit when an exception of prescription can be filed, Babcock's failure to file it at the outset of the litigation did not preclude Miller from filing the exception while he acted as counsel of record.  As such, the alleged malpractice could not be "complete" by the time Eric Miller began representing Plaintiffs.  To the contrary, the malpractice as alleged would have begun during Babcock's representation and persisted for the duration of both Babcock's and Miller's time as counsel of record, leaving the negligent cause and resulting extent of Plaintiffs' damages unresolved.[16] *See Lyon Fin. Servs., Inc. v. Volger Law Firm, P.C.*, No. 10-565, 2011 WL 3880948, at *3 (S.D. Ill. Sept. 2, 2011) (by claiming defendant attorney's alleged malpractice caused its damages for trial losses incurred after defendant's representation but during subsequent nonparty attorney's representation, client waived privileges as to nonparty attorney because the attorney, "if any, that caused [the client's] trial loss remains unresolved"); *cf. Fischel & Kahn, Ltd. v. van Straaten Gallery*, *Inc.*, 727 N.E.2d 240, 244 (Ill. 2000) (alleged malpractice – defendant attorney's negligent legal advice – was "insufficient to put the cause of [the client's] damages at issue," to waive privilege as to non-party attorney who represented client against litigation associated with defendant's negligent advice because "no question exists regarding who allegedly committed the malpractice complained of.").

Because the alleged malpractice cannot be confined to Babcock's representation, the fact-finder will necessarily have to determine whether the negligent conduct, if any, of Eric Miller or any other person caused or contributed to Plaintiffs' claimed damages.  This requires the fact

---

[16] This determination is consistent with the "principal legal issues" named by the parties in their Joint Status Report: (1) "causation," (2) "[a]ssessment/apportionment of fault between parties and nonparties," and (3) "[c]omparative fault of Plaintiffs and non-parties." (R. Doc. 9 at 4).

24

finder to resolve whether Miller was negligent in his representation and, if yes, whether his negligence caused or contributed to Plaintiffs' damages. In the legal malpractice context, Miller will only be considered negligent if he failed to exercise "at least that degree of care, skill and diligence" exercised by "prudent practicing attorneys" in Miller's area. *Fed. Sav. & Loan Ins. Co.*, 808 F. Supp. at 1268 (quotation omitted). If negligent, the portion, if any, of unnecessary attorney's fees, lost business opportunities, lost profits, etc., caused by Miller's negligence must then be determined. *See Colonial Freight Sys. Inc.*, 2012 WL 1570103, at *2 ("a plaintiff must show evidence" that the attorney's negligence "caused the plaintiff's loss . . . simply establishing that an attorney was negligent . . . would not be sufficient to state a cause of action for legal malpractice") (quotation omitted).

The nature and timeframe of the particular damages alleged by Plaintiffs will require the finder of fact to examine the entirety of Miller's conduct and handling of Plaintiffs' defense. Plaintiffs have therefore placed their communications with Miller, and Miller's legal theories and mental impressions contained in his notes and drafts at issue in this litigation. Moreover, the information contained in these materials cannot otherwise be obtained through depositions, considering they are relevant to whether Miller's conduct was subpar. Had Plaintiffs merely sought damages incurred during Babcock's representation or claimed attorney's fees paid to Miller in addition to those damages, Miller's privileged communications and his work product would likely be irrelevant. *See Lyon*, 2011 WL 3880948, at *3 ("If [the client] were seeking to prove the cause of damages that occurred prior to trial, and only during the [defendant's] representation, then attorney-client communications could arguably be irrelevant."); *Rutgard*, 185 F.R.D. at 599 ("Had Plaintiff's claims for damages been limited only to recovery of attorney's fees incurred" by hiring subsequent counsel "this Court would likely find that Plaintiff

25

had not waived the attorney-client privilege . . . and at best, might have ordered a production of time sheets . . . .").  However, Plaintiffs chose to recover damages for attorney's fees, business losses and personal losses incurred throughout *Dawson II* from only Babcock.  In doing so, Plaintiffs have made the cause of their damages a significant issue in this litigation warranting a complete waiver of the attorney client privilege and work product protection over the materials withheld by Eric Miller.[17]  It would undermine the most basic concepts of fairness to allow Plaintiffs to claim Babcock is liable for the entirety of their damages, while precluding the discovery of contrary evidence. *See Smith*, 513 So.2d at 1145 ("the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; . . . it should not furnish one side with what may be false evidence and deprive the other of the means of detecting the imposition.") (quotation omitted).

Finally, Plaintiffs suggest that the liability of Miller is not at issue because they did not name Miller as a Defendant and chose not to recover damages from Miller.  Plaintiffs emphasize that a "client is entitled to maintain the attorney-client privilege as to his/her second counsel by choosing to accept the possibility of a reduction in damages." (R. Doc. 18 at 10).  Likewise, Plaintiffs suggest the attorney client privilege itself might actually preclude Defendants from

---

[17] Under similar circumstances, other district courts, including our sister districts in the Eastern and Western Districts of Louisiana, have recognized waiver of the attorney client privilege and work product protection.  *See Conoco*, 191 F.R.D. at 119 (W.D. La. 1998) (general contractor waived protection of attorney's opinion work product by seeking indemnification from subcontractor because the basis for liability and the reasonableness of the underlying settlement was at issue); *Asset Funding Grp., LLC*, 2008 WL 4186884, at *5 (E.D. La. Sept. 9, 2008) (plaintiff waived privilege over communications with other non-party attorney in plaintiff's legal malpractice claim because plaintiff placed at issue its "state of mind" and the "comparative fault" of defendants and any other tortfeasors); *see also Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 11-851, 2013 WL 4757486, at *10, 15-16 (S.D. Ohio July 12, 2013) (noting courts have "compelled discovery of 'other-attorney communications'" in cases where the "complexity and overlap of the underlying representations made the 'other-attorney communications' relevant to determining the accused attorney's liability for wrongdoing" and compelling production of other attorney's work product and privileged communications as relevant to "liability and damages" and necessary for defendant to "fairly and specifically" address client's allegations of liability and damages) (collecting cases).

seeking contribution for damages from Miller and thus, a waiver cannot be found.  In support of this argument, Plaintiffs cite *Mirch v. Frank*, 295 F. Supp. 2d 1180 (D. Nev. 2003).

Plaintiffs' argument is unpersuasive.  First, Plaintiffs are correct that they may choose a possible reduction in damages to maintain the attorney-client privilege. *See Smith*, 513 So.2d at 1145 (a party who waives the privilege before trial by placing privileged materials at issue "always has the option of avoiding compelled discovery by stipulating that he will not introduce that or any privileged communications upon the same subject into evidence at trial.")  However, Plaintiffs have not effectively made that choice.  Plaintiffs' Complaint seeks recovery of damages for lost business opportunities, lost profits, mental anguish, etc., incurred during Miller's representation.

Even if Plaintiffs stipulated they would not use privileged materials at trial, as their claims currently stand, both parties would be unable to either prove or defend against the claims for damages during Miller's representation without the privileged materials.  Ultimately, Plaintiffs have not positioned themselves to maintain the attorney client privilege or work product protection as to Miller, because they have not chosen "the possibility of a reduction in damages."  They have simply elected to pursue recovery of those damages from Babcock instead of Miller.

Second, not naming Miller as a party does not negate the fact-finder's legal obligation to allocate fault between all potential tortfeasors.  Thus, while Plaintiffs may not recover from Miller himself, Babcock's damages must still be reduced according to the percentage of fault, if any, allocated to Miller.  Finally, *Mirch v. Frank*, the case Plaintiffs rely on, is inapposite. 295 F. Supp. 2d at 1180.  *Mirch* applies where the defendant-attorney being sued for legal malpractice seeks contribution from the successor attorney, where the successor attorney also represents the

27

client in the legal malpractice litigation. *Id.* at 1185.  Miller does not represent Plaintiffs in this litigation and Defendants have made no claim for contribution against Miller or any other attorney.  *Mirch* is neither applicable nor persuasive.

As such, in addition to those materials previously found to be waived by Plaintiffs, the Court finds Plaintiffs have waived the attorney client privilege and work product protection over all materials responsive to Item Nos. 1, 9 and 11 — Miller's "communications" with Plaintiffs and Tobolsky, in addition to his "notes and drafts" and "drafts and duplicates".  Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item Nos. 1, 9 and 11.  The Court clarifies that the materials previously determined to be waived in response to Item Nos. 1, 9 and 11 are also encompassed in this portion of the Court's Ruling.  Further, the materials which must be produced in response to Item No. 1 are limited to Miller's communications with either Plaintiffs or Tobolsky that relate to *Dawson II*.

### B.     Eric Miller's Waiver of the Work Product Protection

Unlike the attorney client privilege, work product protections "are held by both the attorney as well as the client" and either one may assert it. *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009).  The client's waiver of the "work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994).  Because Miller asserted a claim of work product protection in his initial declaration, Plaintiffs' waiver of Miller's work product does not negate his assertion of the privilege.  And so, the Court will not order production of Miller's work product absent his own waiver.

28

Rule 45(e)(2)(A) [18] requires a person withholding otherwise discoverable information on the basis of privilege to (1) expressly make the claim, and (2) describe the nature of the withheld information in a way that would allow other parties and the court to assess the claimed privilege. Eric Miller's declaration listed several broad and vague categories of documents withheld under *either* the attorney client privilege or work product protection. This declaration is inadequate to avoid disclosure under a claim of privilege.

The standard for testing the adequacy of a declaration or privilege log is "whether, as to each document, the entry sets forth facts that would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory assertions." *Chemtech Royalty Assocs., L.P. v. U.S.*, No. 07-405, 2009 WL 854358, at *3 (M.D. La. March 30, 2009) (quotation omitted). "Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." *Mack v. GlobalSantafe Drilling Co.*, No. 04-3461, 2006 WL 980746, at *1 (E.D. La. April 11, 2006); *see also Estate of Manship v. U.S.*, 236 F.R.D. 291, 296 n.4 (M.D. La. 2006) ("A privilege log should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, purpose for its production, and specific explanation of why the document is privileged or immune from discovery."), *partially vacated on other grounds by* 237 F.R.D. 141 (M.D. La. 2006); *Haensel v. Chrysler Corp.*, No. 96-1103, 1997 WL 537687, at *4 (E.D. La. Aug. 22, 1997) (affirming magistrate judge's requirement that the plaintiff's privilege log "set forth the date of the document, the author of the document, the

---

[18] This citation is to the version of Rule 45 currently in effect. Prior to the 2013 amendments to the Federal Rules of Civil Procedure (which went into effect on December 1, 2013) this language was found in Rule 45(d)(2)(A). Other than renumbering, the amendment made no change to this portion of Rule 45.

recipient of the document, and a brief description of the document to which the asserted privilege applies." (citing *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996) ("A proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted."))).

Although Eric Miller is a non-party, he was served with a Rule 45 subpoena to produce documents maintained in his *Dawson II* litigation file. (R. Doc. 46-2). In response to that subpoena, Miller filed a two-page declaration which listed 8 categories of documents withheld under either the attorney client privilege or work product protection: "(1) internal firm communications regarding billings and client status, (2) attorney notes, (3) correspondence with FGAF, Mr. Day, Mr. Ripka and/or Mr. Tobolsky, (4) emails with FGAF, Mr. Day, Mr. Ripka and/or Mr. Tobolsky, (5) drafts and duplicates of pleadings, (6) attorney notes and drafts, (7) Mr. Ripka's analysis of the claims by the Dawsons, and (8) withdrawal documents/exhibits filed in camera with the court." (R. Doc. 46-3).

The actual privilege applicable to each category is not provided. The actual documents contained within each category are not provided. The Court is simply unable to determine the viability of the work product protection claimed by Miller. Moreover, the Court issued an Order (R. Doc. 47) requiring Babcock to serve Miller with a copy of the Motion to Compel (R. Doc. 46) to ensure Miller's right to respond. Babcock then personally served Miller with a copy of the Motion to Compel (R. Doc. 49). Nonetheless, Miller failed to respond to the Motion to Compel or otherwise attempt to support his claimed privilege. Therefore, the Court finds that Miller has waived the work product protection over the withheld documents. Since work product protection

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 30 of 38

is held by the client and attorney, only those documents previously found waived by Plaintiffs must be produced.  Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Items Nos. 9 and 11.

**C.     Withdrawal Documents Filed In-Camera in the Underlying Litigation**

Item No. 12 seeks "withdrawal documents/exhibits filed in camera by the Kullman Firm" in *Dawson II.*  The documents responsive to Item No. 12 do not appear to be subject to either the attorney client privilege or work product protection.  During oral argument, the parties recognized that Item No. 12 covers a category of withheld documents identified in Miller's declaration. (R. Doc. 16-3 at 1).  Based on Miller's declaration, the parties were unable to provide the Court with any knowledgeable argument concerning their disclosure.  The Court noted that it was unclear whether Item no. 12 includes any documents that (1) may also be responsive to Item nos. 1, 9 and 11, (2) are privileged, or (3) were privileged but are now discoverable due to waiver.  Plaintiffs' counsel informed the Court that these documents should be part of the documents Miller previously provided.  For that reason, the Court issued an Order requiring Plaintiffs to obtain the documents and inform the Court and Babcock of their contents and assert any relevant privilege. (R. Doc. 35 at 3-4).

Plaintiffs failed to provide the Court with any further information regarding these documents.  Therefore, the Court finds that Plaintiffs have waived those privileges, if any, applicable to the documents responsive to Item No. 12. Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 12 and any documents responsive to Item No. 12 must be produced.

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 31 of 38

**D.**    **Plaintiffs' Waiver of the Attorney Client Privilege and Work Product Protection for Materials Maintained by William Tobolsky and Withheld by Plaintiffs as Requested in Item Nos. 2 and 10**

Defendants move the Court to compel Plaintiffs to produce attorney-client communications and "attorney notes and drafts generated by Tobolsky Law that relate to the [underlying litigation]." (Item Nos. 2 and 10, R. Doc. 38). These materials are located in Plaintiffs' client-file, which is "maintained" by William Tobolsky, their corporate attorney. (Defs.' 2d Req. for Produc. No. 1, R. Doc. 46-4 at 7). During discovery, Tobolsky submitted a privilege log. (R. Doc. 16-3 at 2-6). The Tobolsky Privilege Log briefly describes 144 documents in Tobolsky's file generated during his representation of Plaintiffs at the time of the underlying litigation (R. Doc. 16-3 at 2-6). Plaintiffs claim the 144 documents are either protected as work product or subject to the attorney client privilege.[19] However, the Court's review of the privilege log does not identify any documents that may be responsive to Item No. 10, which requests production of 'attorney notes and drafts,' and may constitute attorney work product.

The only document which could potentially be a "draft" was no. 130, described in the privilege log as an undated "Memo" written by Plaintiff Keith Day to William Tobolsky concerning the "Dawson claim of damages." (R. Doc. 16-3 at 6). Document no. 130's description indicates it qualifies as a communication between Keith Day and Tobolsky and is protected by the attorney client privilege. However, the Court found this description insufficient to determine whether any portions of the document were authored by Tobolsky and contained his notes, mental impressions or legal theories. In that case, document no. 130 could potentially

---

[19] The Tobolsky Privilege Log was originally created in connection with Defendants' Rule 45 subpoena served upon non-party Tobolsky and Defendants' first Motion to Compel. (R. Doc. 16). The Court denied Defendants' first Motion to Compel on procedural grounds. (R. Doc. 43). Nonetheless, the Tobolsky Privilege Log remains relevant, as Defendants later requested those same documents directly from Plaintiffs under Rule 34 (R. Doc. 46-4 at 7), which are now at issue in Defendants' current Motion to Compel (R. Doc. 46).

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 32 of 38

qualify as attorney work product and it may be protected from disclosure. In order to determine whether any portions of document no. 130 contained attorney work product, the Court ordered Plaintiffs to obtain the document from Tobolsky and present it for in-camera review by November 22, 2013. (R. Doc. 48). As of this Ruling, Plaintiffs have failed to comply with the Court's Order directing them to produce document no. 130 for in-camera review.

Generally, a court has broad authority to fashion sanctions for failure to comply with discovery orders. See *Chilcutt v. U.S.*, 4 F.3d 1313, 1320-21 (5th Cir.1993) (a court "may make such orders in regard to the failure as is just"); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-08 (1982) (district courts have broad discretion in applying discovery sanctions). When sanctionable conduct occurs in the context of withholding allegedly privileged or protected materials, the 1993 Advisory Committee Note to Rule 26(b)(5) cautions: "To withhold materials without such notice [sufficient to enable other parties to assess the applicability of the privilege or protection] is contrary to the rule, and subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."

Because Plaintiffs failed to comply with the Court's November 12, 2013 Order (R. Doc. 48), the Court finds Plaintiffs have waived the attorney client privilege and any other privilege that might have applied to document no. 130. Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** to the extent it seeks production of document no. 130 in response to either Item No. 10 or Item No. 2.

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** as to Item No. 10 to the extent it seeks any notes, drafts or duplicates other than document no. 130 of the Tobolsky Privilege Log.

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 33 of 38

Having determined that none of the other documents withheld by Tobolsky constitute attorney work product, the only remaining issue is whether Plaintiffs have waived the attorney client privilege over their other communications with Tobolsky, as requested in Item No. 2.

Babcock suggests Plaintiffs have sufficiently placed their communications with Tobolsky at issue by claiming Babcock is responsible for their resulting damages, not Tobolsky. (R. Doc. 16-1 at 8). Plaintiffs disagree. According to them, Tobolsky is a New Jersey Attorney who represented Plaintiffs "in other ongoing business concerns/litigation." (R. Doc. 18 at 3). Although Tobolsky "received periodic status updates" on the *Dawson II* litigation, he was not involved in *Dawson II* or ever enrolled as counsel. (R. Doc. 18 at 3). Plaintiffs explain that Tobolsky used the "information he received concerning the <u>Dawson</u> litigation in order to tailor FGAF corporate strategies and advise Ripka and Day in other legal matters." (R. Doc. 18 at 3-4). Plaintiffs urge that disclosure of Tobolsky's files would reveal confidential information on unrelated matters: "corporate governance, corporate structure, corporate bylaws, and corporate status vis-à-vis other pending litigation." (R. Doc. 18 at 4).

As previously discussed, the nature and extent of Plaintiffs' alleged damages have placed their communications with other attorneys at issue. Plaintiffs claim that Babcock is liable, in particular, for their business losses, including lost opportunities and lost profits. However, they explain that Tobolsky was simultaneously advising them on corporate strategies and policies, based on information received concerning *Dawson II*. The relevant time for which they claim these losses encompass both the representation of Babcock and Miller. Despite their arguments to the contrary, Plaintiffs have placed Tobolsky's advice concerning Forever Green's corporate strategies and policies at issue by claiming that Tobolsky advised them on business related matters based on the *Dawson II* litigation, yet Babcock's malpractice is the source of Plaintiffs'

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 34 of 38

business losses.  This would allow the Plaintiffs to use Tobolsky as a sword – claiming that he gave them advice based on Babcock's malpractice, thereby causing losses – but then employ the shield of privilege in refusing to disclose any of that actual advice.  Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 2 to the extent any of the responsive communications between Plaintiffs and Tobolsky concerning "FGAF corporate strategies" and/or legal advice that Tobolsky based off of the "periodic status updates" on the *Dawson II* litigation.

Second, Tobolsky is also listed as a potential trial witness who might testify to the "facially obvious" exception of prescription and Plaintiffs' desire to avoid personal liability.  As previously discussed in the context of Miller, Plaintiffs' indication of their intent to call Tobolsky as a trial witness constitutes a waiver of the attorney client privilege as to any communications concerning the subject matter of his testimony.  Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to Item No. 2 to the extent any of the responsive communications indicate Plaintiffs' desire to avoid personal liability and accept a default judgment against Forever Green in *Dawson II* and the viability of the underlying personal tort claims against Day and Ripka — i.e., whether those claims were viable or had prescribed.

Moreover, for the same reasons discussed in connection with Babcock's request for communications between Miller and Chris Alexander, the Court finds Babcock has not made a sufficient showing to warrant the production of communications between Tobolsky and Plaintiffs' current attorney, Chris Alexander.  Therefore,

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** to the extent Item No. 2 seeks communications between Tobolsky and Chris Alexander.

35

Finally, Babcock has not persuaded the Court that production of any communications between Plaintiffs and Tobolsky, beyond those discussed above, is warranted. Plaintiffs represent that Tobolsky's representation was limited to their corporation, Forever Green. Babcock has not alleged otherwise. Because Tobolsky's involvement in the underlying litigation did not involve any of the personal tort claims against Plaintiffs, the Court finds any communications responsive to Item No. 2, other than those previously ordered, are not at issue in this litigation.

## VI.     CONCLUSION

For the reasons previously discussed, **IT IS ORDERED** that Babcock's Motion to Compel (R. Doc. 46) is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Ruling as detailed below. The Clerk of Court shall serve a copy of this Ruling on non-party attorney, Eric Ray Miller of the Kullman Firm, through the Court's electronic filing system. Additionally, Babcock shall provide non-party attorney, Eric Ray Miller of the Kullman Firm, with a copy of the Court's Ruling.

Concerning **Items Nos. 1, 9, 11 and 12** subpoenaed from non-party attorney, **Eric Miller of The Kullman Firm**:

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** as to **Item No. 1** to the extent it seeks communications between Eric Miller and Plaintiffs' current attorney, Chris Alexander.

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to **Item No. 1** to the extent it seeks communications between Eric Miller and either Keith Day, David Ripka or William Tobolsky that concern the underlying litigation, *Dawson II.*

Non-party, **Eric Miller** of the Kullman Firm must **produce** any documents responsive to Item No. 1 as set forth above **by January 24, 2014** at the time and location specified in the subpoena (R. Doc. 46-2 at 4) — 10:00 a.m. Baton Rouge Court Reporters, 12016 Justice Ave., Baton Rouge, Louisiana 70816.[20]

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to **Item Nos. 9, 11 and 12**.

Non-party, **Eric Miller** of the Kullman Firm must **produce** any withheld documents responsive to Item Nos. 9, 11 and 12 **by January 24, 2014** at the time and location specified in the subpoena (R. Doc. 46-2 at 4) — 10:00 a.m. Baton Rouge Court Reporters, 12016 Justice Ave., Baton Rouge, Louisiana 70816.

Concerning **Items Nos. 2 and 10** requested from Plaintiffs during discovery in Defendants' Request for Production:

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** as to **Item No. 2** to the extent it seeks communications between William Tobolsky and Plaintiffs' current attorney, Chris Alexander.

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** as to **Item No. 2** to the extent it seeks communications between Tobolsky and either Plaintiffs or Eric Miller that (a) concern "FGAF corporate strategies" and/or legal advice that Tobolsky based off of the "periodic status updates" on the *Dawson II* litigation; and/or (b) indicate Plaintiffs' desire to avoid personal liability and accept a default judgment against Forever Green in *Dawson II* and the viability of the underlying personal tort claims against Day and Ripka—i.e., whether those claims were viable or had prescribed.

---

[20] The Defendants and Mr. Miller may mutually agree to an alternative time and location of production that is not <u>later</u> than this date.

Case 3:11-cv-00633-JJB-RLB   Document 50   01/03/14   Page 37 of 38

**IT IS ORDERED** that Babcock's Motion to Compel is **GRANTED** to the extent it seeks

production of **document no. 130** of the Tobolsky Privilege Log in response to either **Item No. 2**

or **Item No. 10**.

Plaintiffs must produce these withheld materials in response to Babcock's Request for

Production **by January 24, 2014**.

**IT IS ORDERED** that Babcock's Motion to Compel is **DENIED** as to **Item No. 10** to

the extent it seeks any notes, drafts or duplicates other than document no. 130 of the Tobolsky

Privilege Log.

Signed in Baton Rouge, Louisiana, on January 3, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**